Bradley J. Williams
ISB #4019
MOFFATT THOMAS
900 Pier View Drive
PO Box 51505
Idaho Falls, ID 83405
PH: (208) 522-6700
FX: (208) 522-5111
Email:  bjw@moffatt.com
*Local Counsel for Defendant*

Iwana Rademaekers, *Admitted Pro Hac Vice*
TX BAR # 16452560
LAW OFFICES OF IWANA RADEMAEKERS, P.C
14785 Preston Road, Suite 550
Dallas, Texas 75254
PH:  (214) 579-9319
FX:  (469) 444-6456
Email:  iwana@rademaekerslaw.com
*Lead Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANDRA SMITH, aka SANDRA MECHAM,<br><br>      Plaintiff,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>      Defendant. | Case No. 4:14-cv-00495-CWD<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendant Liberty Life Assurance Company of Boston ("Liberty Life") files this Memorandum in Support of its Motion for Summary Judgment.

## I. Introduction

In her Complaint for Damages, Plaintiff Sandra Smith[1] ("Smith") alleges that Liberty Life should not have withheld her monthly long term disability benefits in satisfaction of the benefit overpayment created when Smith received retroactive Social Security disability benefits ("SSDB")[2] and refused to reimburse Liberty Life for the overpayment.[3] The benefits claimed by Smith were part of an employee benefit plan (the "LTD Plan") provided by her employer, Wells Fargo & Company ("Wells Fargo"), under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Therefore, as Smith has admitted,[4] this matter is governed by ERISA. Wells Fargo had contracted with Liberty Life for a Group Disability Income Policy (the "Policy") to insure payment of benefits to Wells Fargo employees who participated in the Wells Fargo LTD Plan.[5]

Smith was injured in a motor vehicle accident for which she sought recovery from a third person.[6] In connection with the injuries sustained by Smith in the accident, Smith also sought and received benefits from the LTD Plan, as well as the self-insured short term disability benefit plan (the "STD Plan") sponsored by Wells Fargo.[7] Liberty Life asserted both its and Wells Fargo's right to subrogation under the terms of the Policy,[8] and ultimately agreed to settle the subrogation interests for a pro rata share of the settlement received by Smith.[9] Liberty Life fairly considered the provisions of the Policy and the documents available to it[10] in determining that its

---

[1]  Many of the relevant documents in this case refer to Plaintiff Sandra Smith as "Sandra Mecham."
[2]  Heins Aff., at ¶ 10 and Exhibit 14, Liberty/Smith 386-394.
[3]  Heins Aff., at ¶ 12 and Exhibit 21, Liberty/Smith 356.
[4]  "Plaintiff's civil action was brought pursuant to 28 U.S.C. § 1132(a)(1)(B) . . ." Plaintiff's Motion to Remand (Dkt 10) at p. 1.
[5]  Affidavit of Heather Heins ("Heins Aff."), at ¶ 4 and Exhibit 1, Liberty/Smith 1-44.
[6]  Heins Aff., at ¶ 5-6 and Exhibit 2, Liberty/Smith 458-465.
[7]  Heins Aff., at ¶ 5 and Exhibits 3 and 4, Liberty/Smith 297-298.
[8]  Heins Aff., at ¶ 8 and Exhibit 8, Liberty/Smith 423.
[9]  Heins Aff., at ¶ 9 and Exhibit 10, Liberty/Smith 408-409.
[10] Heins Aff., at ¶ 14 and 15-17.

right to recover the overpayment that resulted from the retroactive SSDB payment was not waived by its settlement of the motor vehicle accident subrogation interest[11] because such provisions in the Policy are wholly separate and different in nature.  Moreover, Liberty Life's letter proposing the pro rata settlement specifically reserved Liberty Life's right to apply all other provisions in the Policy.[12]  Therefore, Liberty Life's decision to recover the SSDB overpayment must be upheld by the Court, as such decision was not an abuse of discretion, which is the standard of review the Court must apply in this action.

## II.  Evidence in Support of Liberty Life's Motion for Summary Judgment and Position on Oral Argument

Liberty Life's Motion is supported by the summary judgment evidence consisting of the Affidavit of Heather Heins, along with Exhibits 1-23, which are attached hereto.  Liberty Life also refers to its Statement of Undisputed Facts and Additional Material Facts filed separately and contemporaneously herewith, pursuant to U.S. Dist. Idaho L.R. 7.1(b)(1).  All summary judgment evidence is fully incorporated into Liberty Life's Motion.

Liberty Life believes the Court can resolve this dispute based on the parties briefing without oral argument.  However, should the Court need additional clarification of the issues and desire to hear arguments of the parties, counsel for Liberty Life stands ready to appear, if requested.

## III.  Argument

### A.   Standard of Review - The Court Must Review Liberty Life's Decision Regarding Smith's Benefits Under the "Abuse Of Discretion" Standard.

Smith cannot recover on her ERISA claim for recovery of benefits from the LTD Plan because the decision by Liberty Life to withhold her benefits in satisfaction of the SSDB

---

[11]   Heins Aff., at ¶ 12-13 and Exhibits 19 and 23, Liberty/Smith 363-365 and 350.
[12]   Heins Aff., at ¶ 5-6 and Exhibit 21, Liberty/Smith 458-465.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**                               3

overpayment pursuant to the terms of the Policy was not an abuse of discretion. The Policy specifically states that, "Liberty shall possess the authority to construe the terms of this policy and to determine benefit eligibility hereunder."[13] Therefore, in reviewing Liberty Life's decision to apply Smith's Policy benefits to the overpayment she failed to repay to Liberty Life, the Court must apply an abuse of discretion standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir.1999); Abatie v. Alta Health and Life Ins. Co., 458 F.3d 955, 966-967 (9th Cir.2006).

Liberty Life can only be found to have abused its discretion if it: "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bell, 410 F.3d 1173, 1178 (9th Cir.2005); Schikore v. BankAmerica Supplemental Retirement Plan, 269 F.3d 956, 960 (9th Cir.2001) (quoting Eley v. Boeing Co., 945 F.2d 276, 279 (9th Cir.1991)). An abuse of discretion standard is significantly deferential and requires a "definite and firm conviction that a mistake has been made." Snow v. Standard Ins. Co., 87 F.3d 327, 331 (9th Cir.1996). Liberty Life's decision should only be overturned if it is "so patently arbitrary and unreasonable as to lack foundation in factual basis...." Oster v. Barco of California Employees' Ret. Plan, 869 F.2d 1215, 1218 (9th Cir.1988).

However, when the plan gives discretion to an administrator who "operate[s] under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 103 (1989). Because Liberty Life was acting as both the claims fiduciary and the insurer with regard to Smith's claim for benefits from

---

[13] Heins Aff., at ¶ 18 and Exhibit 1, Liberty/Smith 38. *See also*, Exhibit 6, Liberty/Smith 269 ("The insurer of each "insured" ERISA plan sponsored by Wells Fargo & Company has the discretionary authority to administer and interpret benefits offered the planit insures.").

the LTD Plan, it will be deemed to have a conflict of interest. However, this is the sole source of Liberty Life's alleged conflict of interest in this action. Additionally, there is evidence before the Court that Liberty Life took affirmative steps to ensure accuracy and fairness in its claim process.[14] Therefore, the conflict will "prove less important (perhaps to the vanishing point)" due to these steps taken by Liberty. Id. at 117.

### B. Smith Ignores the Plain Meaning of Liberty Life's January 28, 2013 Letter.

Smith's entire claim rests on a single sentence in Liberty Life's January 28, 2013, letter,[15] and ignores the rest of the letter, including the context for that single sentence. Smith argues that Liberty Life's statement, "Please let this confirmation serve as a full & final settlement release of lien upon receipt of payment of $17,102.59" means that every provision of the Policy regarding any possible offset or reimbursement right has been gutted from the Policy. From the context of the letter, and the remainder of the language of the letter, it is true that this is not the case. "When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007).

The first sentence of this letter states, "In response to your letter on January 9, 2013, Liberty Life Assurance does not agree to waive the short and long term subrogation interests." This sentence makes clear that the subject matter of the letter is the motor vehicle accident subrogation interest and is not meant to expand beyond that provision of the Policy. Additionally, the letter specifically states, "This release pertains to and only to Liberty Life Assurance's subrogation provision for Short Term Disability Benefits claim # 4044567 and Long

---

[14] Heins Aff., at ¶ 14-17.
[15] Heins Aff., Exhibit 10, Liberty/Smith 408-409.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**     5

Term Disability Benefits claim # 4142343. All other Short and/or Long Term Disability contract provisions are still applicable." Again, the letter makes clear that only the motor vehicle accident subrogation interests are the subject of the letter, and as such, any release of lien would be limited solely to that subrogation interest. The reservation language ("All other Short and/or Long Term Disability contract provisions are still applicable.") unambiguously means that the "full & final settlement release" was limited to the subrogation provision in the Policy and was not meant to apply to any provision in the Policy other than the subrogation provision. Smith's interpretation of the January 28, 2013, letter is simply wrong.

### C.   Smith Ignores the Plain Meaning of the Different Policy Provisions Regarding Subrogation and "Other Income Benefits."

"ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Rather, Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws." Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F3d 982, 985 (9th Cir. 1997) (citation omitted). If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990).

Smith's claim rests on the premise that the subrogation provision in the Policy and the "Other Income Benefits" and offset provisions are one and the same. However, as Liberty Life described in detail in its letters to Smith and her counsel, these provisions are separate, and contained in completely different sections of the Policy.[16] Thus, Liberty Life's acceptance of a pro rata portion of the motor vehicle settlement did not affect its right to recover the overpayment that resulted from Smith's receipt of retroactive SSDB.

---

[16]   Heins Aff., at ¶ 12-13 and Exhibits 19 and 23, Liberty/Smith 363-365 and 350.

The Policy states that "Liberty will be subrogated to all rights of recovery that the Covered Person has against any third party,"[17] and it is this Policy provision that was the subject of Liberty Life's January 28, 2013, letter, as described above.  Separately, and in a completely different section of the Policy is a provision that includes SSDB within the definition of "Other Income Benefits" [18] that are subtracted from the Monthly Benefit under the Policy.[19]  When Smith refused to reimburse Liberty Life for the overpayment that resulted when she received a retroactive award of SSDB, Liberty properly exercised its explicit right under the Policy to recover the overpayment by "reducing any benefits payable under this policy."[20]  Liberty Life's interpretation of these provisions in the Policy as being separate is completely correct and the only reasonable interpretation of the Policy.  Such decision certainly was not a construction that conflicted with the language of the Policy that would amount to an abuse of discretion, which is what Smith must prove to prevail on her claim in this action.

D. **Smith Ignores the Plain Meaning of the Social Security/Reimbursement Agreement She Signed Regarding Repayment of Advanced SSDB.**

Not only does the Policy language negate Smith's claim, but the Social Security/Reimbursement Agreement she signed on September 25, 2011,[21] firmly establishes the nature of the relevant Policy provisions, as well as Smith's understanding of her obligations with regard to retroactive SSDB payments and what would happen if she failed to reimburse Liberty Life, as required.  The Agreement states,

> If disability benefits are approved I request that [Liberty Life] pay me my benefit with no reduction for estimated Social Security Disability benefits until Social Security makes a decision.  I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life.  In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security

---

[17] Heins Aff., at ¶ 6 and Exhibit 1, Liberty/Smith 40.
[18] Heins Aff., at ¶ 7 and Exhibit 1, Liberty/Smith 27 at No. 4.
[19] Heins Aff., at ¶ 6 and Exhibit 1, Liberty/Smith 22.
[20] Heins Aff., Exhibit 1, Liberty/Smith 40.
[21] Heins Aff., at ¶ 7 and Exhibit 5, Liberty/Smith 469.

> benefits until Social Security makes a decision, I agree to the following:
>
> [1-4 omitted]
>
> 5) If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.
> 6) I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.
> . . .
> If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me, including payments for insurance premiums and other deductions paid on my behalf, and Liberty life may withhold future disability benefits until the overpayment is recovered in full.[22]

Accordingly, Smith was fully aware that her failure to repay Liberty for the overpayment that resulted from her receipt of retroactive SSDB would result in discontinuation of her Policy benefit. Importantly, nowhere in this Agreement does it reference the subrogation rights of Liberty Life with regard to payments from responsible third parties. In fact, the subrogation provision was addressed by a completely separate agreement Smith signed on September 21, 2011.[23] These Agreements signed by Smith provide further support that Liberty Life's construction of the provisions as wholly separate is the correct interpretation of the Policy.

### E. The Administrative Record Contains Substantial Evidence That Supports Liberty Life's Termination of Smith's Benefits From the STD Plan and Denial of Smith's Claim for Benefits From the LTD Plan.

Accordingly, Liberty Life did not abuse its discretion in withholding Smith's Policy benefit in satisfaction of the debt she refused to pay. Based on the foregoing, it is clear that Liberty Life did not "construe provisions of the [Policy] in a way that conflicts with the plain language of the [Policy]." <u>Boyd</u>, 410 F.3d at 1178. In fact, the Policy language and evidence is

---

[22] Heins Aff., Exhibit 5, Liberty/Smith 469 (emphasis original).
[23] Heins Aff., at ¶ 6 and Exhibit 2, Liberty/Smith 461.

so clearly supportive of Liberty Life's decision, that the <u>Glenn</u> "tiebreaker" concerning the degree of Liberty Life's conflict need not be considered in the analysis. Nevertheless, should conflict be considered, its importance is truly to the "vanishing point" under <u>Glenn</u> because Liberty Life has affirmatively taken substantial measures to ensure claim accuracy and to remove bias from its claim processing.[24]

In sum, the administrative record establishes that the decision made by Liberty Life to withhold Smith's Policy benefits and apply them toward repayment of the SSDB overpayment Smith refused to reimburse to Liberty Life was not only not an abuse of discretion, but was, in fact, the correct decision based on the provisions of the Policy. Liberty Life's January 28, 2013, letter did not act as a waiver of release of these wholly separate policy provisions. Accordingly, Smith should not prevail on her claim for recovery of benefits pursuant to 29 U.S.C. §1132(a)(1)(B), and the Court should dismiss Smith's claim for recovery of benefits from Liberty Life.

### III. CONCLUSION AND PRAYER

Liberty Life is entitled to summary judgment as a matter of law. Liberty Life did not abuse its discretion in applying the "Other Income Benefits" provision of the Policy to Smith's claim and withholding her benefit from the LTD Plan under the Policy to recover the overpayment of LTD benefits that resulted from Smith's receipt of retroactive SSDB. Therefore, Liberty Life requests that the Court grant its Motion for Summary Judgment, enter a take-nothing judgment on Smith's claims in this action, award Liberty Life its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and grant Liberty Life any other relief to which it shows itself justly entitled.

---

[24] Heins Aff., at ¶ 14-17.

DATED this 4th day of August, 2015.

        LAW OFFICES OF IWANA RADEMAEKERS, P.C

By /s/ Iwana Rademaekers
   Iwana Rademaekers, *pro hac vice pending*
   *Lead Counsel for Defendant*

MOFFATT THOMAS

By /s/ Bradley J. Williams
   Bradley J. Williams, ISB No. 4019
   *Local Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2015, a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, District of Idaho, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record:

   Paul T. Curtis
   Email: curtisandporter@cableone.net

   /s/ Sandy Acker
   Sandy Acker