Bradley J. Williams
ISB #4019
MOFFATT THOMAS
900 Pier View Drive
PO Box 51505
Idaho Falls, ID 83405
PH: (208) 522-6700
FX: (208) 522-5111
Email: bjw@moffatt.com
*Local Counsel for Defendant*

Iwana Rademaekers, *Admitted Pro Hac Vice*
TX BAR # 16452560
LAW OFFICES OF IWANA RADEMAEKERS, P.C
14785 Preston Road, Suite 550
Dallas, Texas 75254
PH: (214) 579-9319
FX: (469) 444-6456
Email: iwana@rademaekerslaw.com
*Lead Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANDRA SMITH, aka SANDRA MECHAM,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>　　　　　　　Defendant. | Case No. 4:14-cv-00495-CWD<br><br>**AFFIDAVIT OF HEATHER HEINS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the undersigned, an officer duly authorized by law to administer oaths, personally appeared Heather Heins, who, on oath, deposes and states as follows:

1. I, Heather Heins, serve as Manager/Appeal Review Unit for Liberty Life Assurance Company of Boston ("Liberty Life"). I maintain my office in Dover, New Hampshire. I am more than 21 years of age and am competent to testify to the matters contained herein. My personal knowledge, as well as the files and records maintained by Liberty Life in the ordinary course of business, form the basis of this affidavit.

2. As part of my responsibilities for Liberty Life, I am familiar with Liberty Life's procedures for processing and administering claims for disability benefits under group disability plans, including the claim at issue herein that was submitted by Plaintiff Sandra Smith ("Smith"). I am also personally familiar with the manner in which Liberty Life maintains files and records, including those that relate to Smith's claim for disability benefits under both the short term disability benefit plan ("the STD Plan") and the long term disability benefit plan (the "LTD Plan"), which are sponsored by Wells Fargo & Company ("Wells Fargo"). I am familiar with and work daily with the construction and interpretation of the various disability plans and policies for which Liberty Life administers claims, including the ones relevant to the claims of Smith in the above-styled litigation.

3. I serve as a custodian of records pertaining to claims administered by Liberty Life, including Smith's claims for benefits from the STD Plan and the LTD Plan. The documents labeled as exhibits to and referenced in this Affidavit are documents kept by Liberty Life in the regular course of business. The documents were transmitted to me in the regular course of business by an employee or representative of Liberty Life who had personal knowledge of the information, and it is the regular practice of Liberty Life to make and/or retain such records. I have reviewed the documents labeled as exhibits to and referenced in this Affidavit, and each of these documents is a true and correct duplicate of the original.

4. Liberty Life issued Group Disability Income Policy No. GD/GF3-850-290121-01 (the "Policy") (Exhibit 1, Liberty/Smith 1-44), to Wells Fargo as group policyholder. This is the Policy by which Wells Fargo funds LTD Plan benefits to its employees, including Smith, and is the specific policy document relevant to the above-styled action. As an eligible employee of Wells Fargo, Smith was a participant in the STD Plan and the LTD Plan and was covered under the Policy.

5. Smith was in a motor vehicle accident on November 18, 2010, (Exhibit 2, Liberty/Smith 460). As a result of injuries sustained in the accident, Smith submitted a claim for benefits from the STD Plan, which is sponsored and self-insured by Wells Fargo. Under the terms of a contract between Liberty Life and Wells Fargo, Liberty Life provides certain administrative services in connection with claims for benefits from the STD Plan. Smith was awarded benefits from the STD Plan for the maximum duration, which was from May 13, 2011, through November 3, 2011 (Exhibit 3, Liberty/Smith 298). Smith's claim for benefits transitioned to the insured LTD Plan on November 4, 2011, and Smith has been eligible to receive benefits from the LTD Plan under the Policy from November 4, 2011, through the current date (Exhibit 4, Liberty/Smith 297).

6. Upon learning that Smith's asserted disability was the result of a motor vehicle accident that may have been the fault of another person, on September 8, 2011, Liberty Life sent Third Party Liability and Reimbursement Agreement forms (Exhibit 2, Liberty/Smith 459) to Smith to complete. Smith's counsel returned the completed and signed forms on September 21, 2011 (Exhibit 2, Liberty/Smith 458-465). One of the signed forms was a Reimbursement Agreement, by which Smith agreed, "to repay the Plan Sponsor for such benefits to the extent that they are for losses for which compensation is paid to the covered person by or

on behalf of the person at fault;" and "to allow the Plan Sponsor a lien on such compensation and to hold such compensation in a trust for the Sponsor" (Exhibit 2, Liberty/Smith 461). This form is consistent with the provision in the Policy that states,

> When Liberty has paid benefits under this policy in an amount in excess of $5,000 to a Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against any third party. Liberty may require an assignment from the Covered Person of his right to recover to the extent of Liberty's payment.
>
> . . . Nothing in this section shall limit Liberty's right to recovery from another source which may otherwise exist at law.
>
> (Exhibit 1, Liberty/Smith 40.)

7. A form titled Social Security/Reimbursement Agreement, along with other forms, was sent to Smith by Liberty Life on September 19, 2011, and Smith completed and signed that form and it is dated September 25, 2011. This form states,

> If disability benefits are approved I request that [Liberty Life] pay me my benefit with <u>no reduction</u> for estimated Social Security Disability benefits until Social Security makes a decision. I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life. In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:
>
> [1-4 omitted]
>
> 5) If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.
> 6) I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.
> . . .
> If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me,

including payments for insurance premiums and other deductions paid on my behalf, and Liberty life may withhold future disability benefits until the overpayment is recovered in full.

(Exhibit 5, Liberty/Smith 469, emphasis original.)

This form is consistent with the provision in the Policy that includes disability benefits under the Social Security Action within the definition of "Other Income Benefits" (Exhibit 1, Liberty/Smith 27 at No. 4) that are subtracted from the Monthly Benefit under the Policy (Exhibit 1, Liberty/Smith 22).[1] Accordingly, under the Policy, Social Security disability benefits are an offset from the Policy disability benefit.

8. On December 14, 2012, Smith's counsel, who represented her in connection with her motor vehicle accident, sent a letter to Liberty Life to request a "disability medical payment ledger" (Exhibit 7, Liberty/Smith 426). Liberty Life responded by letter dated December 28, 2012, which stated Liberty Life "is entitled to reimbursement of all disability benefit payments should [Smith] recover from the responsible party causing her injuries. . . . The total lien amount is $81,387.42 plus future benefits." (Exhibit 8, Liberty/Smith 423).

9. On January 9, 2013, Smith's counsel sent a letter to Liberty Life, which stated, "Because [Smith] is clearly not made whole from her auto accident and the fact the policy limit offered is well absorbed by the subrogation and lien amounts, we are asking you to *waive* you short term and long term subrogation amounts." (Exhibit 9, Liberty/Smith 417, emphasis original). In response, Liberty Life wrote Plaintiff's counsel on January 28, 2013, stating that Liberty Life did not "agree to waive the short and long term subrogation interests. We are

---

[1] Regarding the self-insured benefit from the STD plan, see, Exhibit 6, Liberty/Smith 196 ("Your STD benefit automatically will be reduced by the amount of income you receive (or are eligible to receive) from other sources including but not limited to. . . any income received for disability under a government compulsory benefit or program.").

AFFIDAVIT OF HEATHER HEINS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                          5

however willing to reduce our lien to accept our pro rata share." (Exhibit 10, Liberty/Smith 408). The letter also continued,

> Please let this confirmation serve as a full & final settlement release of lien upon receipt of payment of $17,102.59. This release pertains to and only to Liberty Life's subrogation provision for Short Term Disability Benefits claim # 4044567 and Long Term Disability Benefits claim # 4142343. All other Short and/or Long Term Disability contract provisions are still applicable.

(Exhibit 10, Liberty/Smith 408-409).

The amount of the negotiated, pro rata subrogation interest of $17,102.59 was subsequently received by Liberty Life.

10. On December 13, 2013, Smith spoke on the telephone with William Yost of Liberty Life and advised him that she had been awarded Social Security disability benefits (Exhibit 11, Liberty/Smith 305, Phone Note 58). On December 16, 2013, Liberty Life wrote Smith to remind her that it had "advanced you the money SSDB would ultimately pay, and you signed an agreement to repay the money upon receiving these benefits." (Exhibit 12, Liberty/Smith 401.) The letter also advised Smith that, "The overpayment is payable to Liberty immediately. We ask that you set aside any retroactive payment received to repay this obligation." (Exhibit 12, Liberty/Smith 402.) Liberty Life followed up via a letter to Smith's counsel dated January 29, 2014, requesting a copy of Smith's Social Security disability benefit ("SSDB") award letter (Exhibit 13, Liberty/Smith 396.) On January 29, 2014, Smith's counsel sent a copy of Smith's SSDB award letter to Liberty Life, which showed that Smith began receiving SSDB effective October 2011 (Exhibit 14, Liberty/Smith 388).

11. On February 10, 2014, Liberty Life wrote Smith to advise her of the amount of the overpayment that resulted from receiving benefits with no reduction for SSDB from October 1, 2011, through February 3, 2014 (Exhibit 15, Liberty/Smith 380.) The

overpayment was a total of $45,348.67, with $43,762.25 attributable to benefits Smith received from the LTD Plan under the Policy and $1,586.22 attributable to the benefits from the self-insured STD Plan (Exhibit 15, Liberty/Smith 380.) The calculation attached to Liberty Life's letter includes a credit towards the overpayment of $6,000 in attorneys' fees (Exhibit 15, Liberty/Smith 382.), which is the amount listed as the approved attorneys' fees in the SSDB award letter (Exhibit 14, Liberty/Smith 389).

      12.    On April 8, 2014, Liberty Life again wrote Smith regarding the overpayment created by the retroactive award of SSDB and asked her to update the status regarding her receipt of the retroactive benefits (Exhibit 16, Liberty/Smith 372). Smith did not respond to this letter, so a similar letter was sent by Liberty Life to Smith on May 15, 2014 (Exhibit 17, Liberty/Smith 368). Finally, on May 27, 2014, Smith's counsel wrote Liberty Life and stated that he believed the prior settlement of the disability subrogation interests from the motor vehicle accident precluded Liberty Life from pursuing the SSDB overpayment (Exhibit 18, Liberty/Smith 367). On June 2, 2014, Liberty Life wrote Smith's counsel to advise that Liberty Life's construction of the Policy was that the SSDB overpayment and the motor vehicle subrogation were two completely different provisions of the Policy; thus, Liberty Life's acceptance of a pro rata portion of the motor vehicle settlement did not affect its right to recover the overpayment that resulted from Smith's receipt of retroactive SSDB (Exhibit 19, Liberty/Smith 363-365). When no response was received to this letter from either Smith or her counsel, Liberty Life wrote Smith on August 1, 2014, to again ask about the status of the retroactive SSDB payment from the Social Security Administration (Exhibit 20, Liberty/Smith 358). Because there was still no response from Smith or her counsel regarding the retroactive SSDB payment, on September 2, 2014, Liberty Life wrote Smith to advise her that effective

September 27, 2014, Liberty Life would begin withholding her net benefit check to apply toward the $45,348.67 overpayment (Exhibit 21, Liberty/Smith 356).

13. On September 23, 2014, Smith's counsel wrote Liberty Life, reiterating his position that Liberty Life's settlement of the motor vehicle accident subrogation was a settlement of the SSDB overpayment (Exhibit 22, Liberty/Smith 351). On September 24, 2014, Liberty Life responded, again stating its interpretation of the Policy that the "Subrogation" and the "Other Income Benefits" provisions are separate provisions in the Policy and are not the same thing, and the SSDB overpayment was proper, as Liberty Life was not attempting to recover from the third party again (Exhibit 23, Liberty/Smith 350).

14. As Liberty Life repeatedly stated in its letters to Smith and her counsel, it is Liberty Life's interpretation of the Policy that these two provisions in the Policy (*see*, Paragraph 6 and 7 above; Exhibit 1, Liberty/Smith 22, 27, and 40) are independent of each other. Liberty's interpretation is consistent with its statement in the offer to accept a pro rata portion of the motor vehicle accident subrogation amount that, the release only applied to "Liberty Life Assurance's subrogation provision," and "[a]ll other Short and/or Long Term Disability contract provisions are still applicable." (Exhibit 10, Liberty/Smith 408-409).

15. In evaluating claims for benefits under employee benefit plans insured by Liberty Life, it is Liberty Life's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded, and to pay claims consistently and in accordance with the applicable benefit provisions, so that those claims which are payable under the plan are paid and those which are not payable are not paid.

16. The employees who make claims decisions on behalf of Liberty Life are not evaluated or compensated on the basis of the amount or number of claims paid or denied.

Liberty Life in no way discourages its employees from paying claims that are covered and payable under the terms of its policies.

17. The decision to apply both the subrogation provision of the Policy and the "Other Income Benefits" provision of the Policy to Smith's claim for long term disability benefits was not motivated by self-interest on the part of Liberty Life or by a desire to avoid paying the benefits claimed by Smith. Rather, the decision was based entirely on the relevant provisions of the Policy and other information contained in the administrative record.

18. The Policy states that, "Liberty shall possess the authority to construe the terms of this policy and to determine benefit eligibility hereunder." (Exhibit 1, Liberty/Smith 38.)[2]

FURTHER AFFIANT SAYETH NAUGHT.

_Heather Heins_
Heather Heins

Sworn to and subscribed before me,
this 13th day of July, 2015.

_Notary Public_
My Commission Expires: Charles W Johnson Jr
NOTARY PUBLIC
State of New Hampshire
My Commission Expires 2/25/2020

---

[2] See also, Exhibit 6, Liberty/Smith 269 ("The insurer of each "insured" ERISA plan sponsored by Wells Fargo & Company has the discretionary authority to administer and interpret benefits offered the plan it insures.")

AFFIDAVIT OF HEATHER HEINS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                          9